UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CONNIE M. FOLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Case No. 2:05-cv-63
CONSENT CASE

# **OPINION**

In December of 2002, Connie Foley filed an application for disability insurance benefits (DIB) and supplement security income (SSI) pursuant to the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), 1382d. In her application, plaintiff alleged that since June 10, 1997, she has been disabled from employment as a result of fibromyalgia, hand numbness, fatigue, and muscle and joint pain. *See* Transcript of Administrative Hearing at pages 51-53, 65, 232-235 (hereinafter Tr. at ___). A hearing was held before an Administrative Law Judge (ALJ) on plaintiff's application for benefits on July 21, 2004, in Green Bay, Wisconsin. Tr. at 241-276. On October 26, 2004, the ALJ issued a decision denying plaintiff's claim for DIB and SSI based on a finding that plaintiff retained the residual functional capacity to perform a significant range of light work. Tr. at 12-20. The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for a review on January 14, 2005. Tr. at 4-6. Plaintiff seeks judicial review of the Commissioner's final decision denying her request for DIB and SSI.[1]

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge in this matter.

According to plaintiff, prior to becoming disabled, she was working 40 to 60 hours a week as a machinist and averaged over 20 hours a week as a bartender/waitress. Tr. at 65. Since her disability, plaintiff has attempted to continue work as a bartender, but that work does not qualify as substantial gainful employment. Tr. at 13. The medical evidence of record clearly supports the finding that plaintiff suffers from a severe medical impairment. Tr. at 19. Plaintiff has been diagnosed with fibromyalgia and has taken Neurontin for this condition. Plaintiff has also been diagnosed with carpal tunnel syndrome and had surgery on her left hand. Tr. at 73. Plaintiff also takes Darvocet to control her pain. Tr. at 119. Dr. Kaufman indicated:

> My impression is that Connie may have Reynaud's Syndrome as an explanation for these symptoms. I am going to try to arrange arterial dopplers with cold water immersion to see if this diagnosis could be confirmed. Obviously, if this is the problem she will need to consider smoking cessation. Sometimes a trial of Nafenopin 10 mg per day can be helpful. I discussed this with you on the phone since I know she will be following up with you.

Tr. at 128.

On June 27, 1997, Dr. Grace indicated that plaintiff was no longer capable of performing her machinist job, but that she was capable of working a job that was not repetitive and stressful. Tr. at 137. On May 12, 2002, Dr. Stein indicated that plaintiff was capable of returning to work. Tr. at 138. A report from the Bay Area Medical Center dated May 10, 2001, indicates that plaintiff was working approximately 35 hours a week at a bartender position. Tr. at 141. Dr. Varia indicated in October of 1999 that:

> ROM of the bilateral shoulders and elbows is within normal limits. Tinel's sign is negative bilaterally. Phalen's sign is negative. There is no evidence of any muscle atrophy noted. Strength in the bilateral upper and lower extremities is normal. DTRs are symmetrical. She does have some tenderness in the left thumb. Sensory examination to touch and pinprick is intact and equally felt. Two point discrimination test is normal. Position sense normal.

> IMPRESSION:  1) Bilateral hand numbness.
> 2) Status-post carpal tunnel surgery.
>
> RECOMMENDATION:  I have discussed about these findings with her. I have started her on Neurontin 1– mg. t.i.d. and I also referred her to be seen in the Neurology Dept. for further evaluation.

Tr. at 166-167. Dr. Varia also indicated:

> She continues to have pain in the left lateral hip. She was started on Neurontin, however, when she increased the Neurontin dose to 300 mg. three times a day, she started to have symptoms like vaginal bleeding. She was concerned and discontinued Neurontin and that improved.
>
> We did an MRI examination of the lumbar spine today which did not show any significant abnormality other than minimal degenerative changes at L4-L5. She also has noted to have intermittent neck pain. She is concerned about her symptoms of neck pain, paresthesia in the bilateral hands as well as left hip pain and she is wondering if it may be related to Lyme's disease.
>
> EXAMINATION:   ROM of the cervical spine is normal. She has minimal localized tenderness in the lower cervical paraspinals. ROM of the cervical spine is almost normal.
>
> IMPRESSION:   1) Multiple musculoskeletal complaints.
>
> RECOMMENDATION:  I have discussed about these findings with her. Will do Sed. rate and serum Lyme titer. I have given her a prescription for Mobic 7.5 mg. one on a daily basis. We will also try a physical therapy treatment program which will consist of ultrasound treatment to the left hip and greater trochanteric area. I have suggested to her that she should try this to see if it helps. If it does not, then we will start her on Neurontin in a smaller dose when she does not have any problem with this. I will let her know about her lab results by letter. She will make an appointment if she does not get better in the next three to four weeks.

Tr. at 182. Another report from Dr. Varia indicates:

> EXAMINATION:  The patient is alert, not in any acute discomfort or distress. ROM of the cervical spine is within normal limits. There is no evidence of any significant localized tenderness in the cervical spine noted. She has localized tenderness in the left lateral greater

- 3 -

>   trochanteric area. ROM of the bilateral wrists is within normal limits. Tinel's sign is negative. Phalen's sign is negative. There is no evidence of any swelling of the joints noted on examination.
>
>   IMPRESSION:   1) Multiple musculoskeletal complaints, etiology unclear.
>
>   RECOMMENDATION:   Will do Sed. rate, rheumatoid factor as well as T4 and I will start her on Neurontin 300 mg. t.i.d. I will let her know about the lab results by letter.

Tr. at 189. After an August 2002 visit with Dr. Varia, plaintiff's Neurontin dose was increased as a result of her fibromyalgia. Tr. at 193.

An MRI was performed of plaintiff's lumbar spine on May 7, 2001, and Dr. Warner indicated his opinion following review of the MRI as follows:

>   FINDINGS: The intervertebral discs in the lumbar spine demonstrate normal signal intensity with the exception of L4-5 where I believe there is a subtle degree of signal loss suggested which may indicate some early changes of disc degeneration. There also appears to be a very minimal disc protrusion into the intervertebral neural foramen on the left side at L4-5. Evidence for spinal canal stenosis or nerve root compression is not appreciated. Conus position is normal. There does not appear to be an intradural mass. There do not appear to be any other abnormalities identified on this examination.
>
>   IMPRESSION: Question minimal degenerative change of L4-5 with a small subtle protrusion of the intervertebral disc on the left with no significant stenosis identified.

Tr. at 197.

Plaintiff's treating physician, Dr. Varia, filled out a Verification of Disability and/or Special Medical Needs form for the Michigan State Housing Development Authority, indicating that plaintiff was totally and permanently disabled. Tr. at 198-199.

Plaintiff had a problem with her knee in 2003, for which she had surgery. Tr. at 209. Following the surgery, plaintiff was told by her physician, Dr. Babinski, that she could return to work

on a gradual basis. Tr. at 214. Plaintiff was told in October of 2003 that she could return to work on October 27, 2003, with restrictions. Tr. at 215.

> Plaintiff was seen by Dr. Rahim on February 16, 2004, who indicated:
>
> Connie Foley is a pleasant, 39-year-old female who is here for an annual physical examination. I had seen her in July 2003 for a physical. At that time, she only wanted her knee to be evaluated in detail and she did not want to have a pelvic examination. Today she is referred from the Patient Assistance Center for the examination. As far as her knee is concerned, she underwent right knee arthroscopic partial medial menisectomy and cyst excision in September 2003 and she has been doing pretty well in that regard. She has a history of fibromyalgia, however, and she follows up with Dr. Varia. She is on Neurontin, but since the dose has been increased, she has been noticing a change in her menstrual cycles. She states this happened before also when her dose of Neurontin was increased. She states her cycles have been every two weeks. They last about five days and are quite heavy. This has been going on for the past four months at least.
>
> She also has a history of allergic rhinoconjunctivitis and she states the Zyrtec D I gave her last time really helps. She is also using Flonase. Since she has run out of Zyrtec D, she would like a refill for that.
>
> The last time I saw her, she was 130 pounds and her BMI was 18.8. Today she is much better with a weight of 143 pounds. Her BMI has increased to 21.3. Unfortunately, she has still been smoking and she is not very inclined to quit smoking. She states that with being a bartender, it is very difficult to quit smoking. She is thinking about quitting her job.

Tr. at 218.

Plaintiff testified to suffering from severe pain which significantly limits her ability to work. The ALJ found plaintiff's testimony not "totally credible." Tr. at 19. The ALJ concluded:

> The claimant has the following residual functional capacity to perform and sustain work requiring her to lift 20 pounds occasionally, 10 pounds frequently, sit 6 hours total in an 8-hour workday, stand or walk 6 hours total in an 8-hour workday with an option to change positions from sitting to standing and standing to sitting every 20 minutes or so, only occasional stooping, kneeling, crouching or

- 5 -

>crawling, and no constant handling, fingering or feeling. Accordingly, the claimant retains the residual functional capacity to perform and sustain a significant range of light work.

*Id*.

Plaintiff has filed this action, seeking an order of the Court reversing the denial of DIB and SSI. In reviewing a denial of benefits, this Court is not permitted to decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The Court is required to accept the findings of the Commissioner if they are supported by "substantial evidence," which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla and has been referred to as the amount of evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*.; *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). The substantial evidence test presupposes that there is a "zone of choice within which the Commissioner may proceed without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). A finding of substantial evidence must be based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). This Court is not permitted to try the case *de novo* nor resolve conflicts in the evidence or decide questions of credibility. *See Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997). This Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court were to resolve the factual issues differently. *See Boggle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

This Court's task is to determine whether or not there is substantial evidence in the record to support the decision that plaintiff did not suffer from a disability for a continuous 12-month period beginning on her disability date in 1997. I have carefully reviewed the entire medical

- 6 -

evidence of record. It is clear that plaintiff suffers from significant medical problems and has pain as a result of those problems. Plaintiff's ability to perform substantial gainful employment is definitely affected by her condition. The Commissioner concluded that plaintiff retained the ability to perform a limited range of light work. My review of the medical evidence suggests that I might have resolved the factual issue differently. This is a close case, and if I were reviewing the record *de novo*, I might have awarded the plaintiff benefits. However, I conclude that this case falls within the zone of choice within which the Commissioner may proceed without interference from the courts. *See Mullen*, 800 F.2d at 545. The ALJ considered all the medical evidence of record. This evidence of record does not establish, without question, that plaintiff is totally disabled from employment. Having reviewed the entire medical evidence of record, I conclude that there is substantial evidence to support the finding that plaintiff is capable of performing a limited range of light work.

As the court explained in *Bartyzel v. Commissioner of Social Security*, 74 Fed. Appx. 515 (6th Cir. 2003):

> A person with a condition of fibromyalgia certainly could have serious enough pain to have a disability under the Social Security Act, but the condition does not automatically qualify as listing level impairment. The record in this case does not support a conclusion that plaintiff's fibromyalgia was of the severity as outlined in SSR 99-2p, or contained any of the disabling features that met or equaled in severity the impairments described in 20 CFR Pt. 404, Subpt. P, App. 1, Section 14.00, including Listing 14.06.

*Id*. at 527. Furthermore, the ALJ was not bound by the treating physician's statement that plaintiff was totally disabled. *See Edwards v. Commissioner of Social Security*, 97 Fed. Appx. 567 (6th Cir. 2004).

Accordingly, I find that there is substantial evidence to support the finding of the Commissioner denying plaintiff's request for disability benefits and the decision of the Commissioner will be affirmed.

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 22, 2006